**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JASON V. BACA,

      Plaintiff,

      v.                                No. CV 13-1247 MCA/CG

ALEC STANDIFORD,

      Defendant.

## <u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>

**THIS MATTER** is before the Court upon *Defendant's* Martinez *Report and Motion for Summary Judgment* ("Motion"), filed on January 16, 2015, (Doc. 28); Plaintiff's *Response to Defendant['']s* Martinez *Report* ("Response"), filed on April 20, 2015, (Doc. 37); and *Defendant's Reply in Support of Defendant's* Martinez *Report and Motion for Summary Judgment* ("Reply"), filed on May 18, 2015. (Doc. 39). Plaintiff Jason V. Baca filed a *Prisoner's Civil Rights Complaint* on December 31, 2013 (the "Complaint"), alleging several constitutional claims and a state law tort claim against Defendant Alec Standiford. (Doc. 1).

This matter was referred to this Court to make proposed findings of fact and recommend a disposition by Chief United States District Court Chief Judge M. Christina Armijo. (Doc. 3). The Court finds that Defendant is entitled to qualified immunity and that Plaintiff has failed to state any grounds for relief for one of Plaintiff's constitutional claims, and that Plaintiff has not exhausted all of his administrative remedies as to the other. Since the Court recommends dismissing all of the claims over which it has original jurisdiction, it also recommends declining pendent jurisdiction over the

remaining state law claim. Therefore, the Court **RECOMMENDS** that the Motion for Summary Judgment be **GRANTED** and the Complaint be **DISMISSED**.

## I.    Background

Plaintiff is an inmate who was incarcerated at Bernalillo County Metropolitan Detention Center ("BCMDC") in Albuquerque, New Mexico. (Doc. 1). Plaintiff alleges that while housed at BCMDC, Defendant, a corrections officer at BCMDC, violated federal and state law.[1] (Doc. 1). Plaintiff alleges that on the evening of October 25, 2013, while he was asleep in his cell, Defendant ripped a bed sheet off of his face, causing "a deep gash" in his neck and right shoulder because the sheet had also been wrapped around his neck. (Doc. 1 at 2–3). Plaintiff further claims that Defendant threatened him after he reported the incident, and then retaliated against him by calling him a rat in front of other inmates. (*Id.*). Plaintiff contends generally that these actions violated New Mexico state law and "federal guidelines." (Doc. 1 at 3). The Court construes the Complaint as asserting the following three claims against Defendant in connection with the alleged incidents: (i) a claim of excessive force in violation of the Eighth Amendment; (ii) a claim of retaliation in violation of the First Amendment; and (iii) a state tort claim of battery under the New Mexico Tort Claims Act.[2]

Defendant moves for summary judgment on all three claims. Defendant contends that he is entitled to qualified immunity regarding the Eighth Amendment violations, or in the alternative, that Plaintiff has failed to put forward sufficient evidence to demonstrate

---

[1] The Complaint also asserted claims of negligent hiring and failure to maintain a safe environment against BCMDC. (Doc. 1 at 2). Chief Judge Armijo dismissed those claims and BCMDC as a party in this lawsuit on April 30, 2014. (Doc. 9).

[2] The Court must construe the filings of a pro se litigant liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not go so far as to serve as the pro se litigant's advocate. *Id.* Plaintiff must follow the same procedural rules that govern other litigants. *Nielsen v. Price,* 17 F.3d 1276, 1277 (10th Cir. 1994).

that disputed, material facts exist regarding the claim. Defendant also argues that Plaintiff failed to exhaust his administrative remedies as to the First Amendment claim of retaliation, and therefore Plaintiff is barred from proceeding with that claim. Defendant further maintains that he is entitled to summary judgment on Plaintiff's tort claim for battery.

Plaintiff responds by asserting some new, unverified facts in support of his claims, and asks the Court to deny Defendant's Motion for Summary Judgment. (Doc. 37). He further alleges that he exhausted his administrative remedies as to his Eighth Amendment claim, but is silent regarding exhaustion of the First Amendment claim. (*Id.*).

## II.    Undisputed Facts

The following facts are either uncontroverted, or related in the light most favorable to Plaintiff as the nonmoving party. On October 25, 2013, Plaintiff was an inmate at BCMDC. (Doc. 1 at 2; Doc. 28 at 9 ¶ 1). Between 11 p.m. and 12 a.m. that evening, Defendant was on duty during the graveyard shift in the E unit, Pod 3, where Plaintiff was housed. (Doc. 28-18 at 1 ¶ 3). Defendant conducted an inmate count and bed check while on duty, pursuant to BCMDC policy. (*Id.*; Doc. 28-21 at 3). When Defendant went to check Plaintiff's cell, he found Plaintiff entirely covered with a sheet, and Defendant asked Plaintiff to confirm that he was alright. (Doc. 28-18 at 1 ¶ 4; Doc. 37 at 1 ¶ 5).

After Plaintiff did not respond to Defendant's query, Defendant removed the sheet from Plaintiff's person to conduct his well-being check. (Doc. 28-18 at 1 ¶ 7; Doc. 1 at 2–3). BCMDC Policy 8.10 requires all staff members to visually observe flesh and

movement prior to counting an inmate as present during bedtime head count, and that if in doubt, a staff member must verify the well-being of that inmate. (Doc. 28-21 at 3 ¶ 9). Defendant provided uncontroverted testimony that based on his training, experience, and knowledge an inmate who is evasive to questioning and covers his face presents a number of potential safety issues such as suicide, drug overdose, or attempt to conceal an injury. (Doc. 28-18 at 1 ¶ 6).

The manner in which Defendant removed the sheet from Plaintiff's face is disputed.[3] Plaintiff claims that the sheet was wrapped around his neck, and that Defendant ripped the sheet from his body, causing a deep cut on his neck and shoulder. (Doc. 1 at 2–3). Defendant maintains that the sheet was not wrapped around Plaintiff's neck, and that he removed the sheet from Defendant's face "in a slow, deliberate manner" and did not yank the sheet off forcefully. (Doc. 28-18 at 1 ¶ 7, 2 ¶ 8).

Defendant did not observe any injury to Plaintiff's neck or person after he removed the sheet, and Plaintiff did not tell him that he had been injured by his actions. (Doc. 28 at 10 ¶¶ 9, 11). Plaintiff reported the injury during the following officer shift on October 26, 2013 (Doc. 28-10), and filed a grievance against Defendant on October 28. (Doc. 28-1 at 22–23). Photographs of Plaintiff's neck and shoulder and the statement of the officers who examined Plaintiff indicate that he had redness on his neck and shoulder, which was described as a scratch. (Doc. 28-10 at 1, 9, 10–12). Plaintiff was

---

[3] Defendant also states that he did not make physical contact with Plaintiff's person while removing the sheet. (Doc. 28-18 at 2 ¶ 10). In the Response, Plaintiff suggests for the first time in this matter that Defendant physically touched him while removing the sheet. (Doc. 37 at 1 ¶ 4). Defendant points out that in the Complaint, Plaintiff never alleges that Defendant touched him, only that he removed the sheet from his body. The Court notes that the Response is not submitted under penalty of perjury, and therefore will not be treated as an affidavit for summary judgment purposes. The Court finds that it is undisputed that Defendant only removed the sheet from Plaintiff, and not that he touched Plaintiff while removing the sheet.

examined by medical personnel and cleared to return to his pod on October 26, 2013. (*Id.* at 7).

Plaintiff complained of neck pain to a mental health counselor on November 21, 2013. (Doc. 28-11 at 10). The following day Plaintiff reported to sick call for "extreme" neck pain resulting from the incident. (Doc. 28-11 at 11; Doc. 28-17 at 37). At that time, medical staff observed no redness or bruising, but Plaintiff was provided ibuprofen. (Doc. 28-11 at 11; Doc. 28-17 at 37).

Plaintiff asserts that after Defendant discovered that Plaintiff had reported the incident to BCMDC authorities and filed a grievance against him, that Defendant began to threaten Defendant. (Doc. 1 at 3). These purported threats consist of the following incidents: Defendant told Plaintiff that he would "fuck [him] up in any room where the camera could not see" (Doc. 1 at 3); on November 2, 2013, Defendant yelled at Plaintiff in front of the entire pod, calling him a "rat" and a "little bitch," (*Id.*; Doc. 37 at 3 ¶ 17); and Defendant told Plaintiff that when Defendant sees him in the street he or someone else will "fuck [him] up." (Doc. 1 at 3). Plaintiff alleges that as a result of these threats, he has had severe nightmares, is in fear of leaving his room to get his food, and lives in fear of his safety under Defendant's supervision and of other inmates who believe he is a snitch. (Doc. 1 at 3; Doc. 37 at 5).

### III.    Standard of Review

The Court shall grant summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Id.* A movant who does not bear the burden of persuasion at trial, such as Defendant, need not negate the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Such a movant only bears the burden of making a prima facie demonstration that there is no genuine issue of material fact, and may do so by pointing out a lack of evidence on an essential element of the nonmovant's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323, 325).

If the moving party has demonstrated an absence of material fact, then the "nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. *See Anderson*, 477 U.S. at 249. The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir.1995). To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein. *See Adler*, 144 F.3d at 671.

When a defendant asserts qualified immunity at the summary judgment stage, the responsibility shifts to the plaintiff to meet a "heavy two-part burden." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff must demonstrate on the facts

alleged: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged unlawful activity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). Otherwise, the defendant is entitled to qualified immunity. *Medina*, 252 F.3d at 1128.

The Court directed Defendants to compile and file a *Martinez* Report for the purpose of investigating the incident underlying this lawsuit, and "develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." (Doc. 17 at 2) (quoting *Hall*, 935 F.2d at 1109). "On summary judgment, a *Martinez* report is treated like an affidavit, and the court is not authorized to accept its fact findings if the prisoner has presented conflicting evidence." *Northington v. Jackson,* 973 F.2d 1518, 1521 (10th Cir. 1992). A plaintiff's complaint may also be treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and is sworn under penalty of perjury. *Hall*, 935 F.2d at 1111.

The Court explained to the parties that the *Martinez* Report may be used in deciding whether to grant summary judgment, either upon a motion by one of the parties, or sua sponte. (Doc. 17 at 2). The parties were also urged to submit whatever arguments and materials they consider relevant to Plaintiff's claims in the *Martinez* Report, Response, and Reply. *Id*.

## IV.    Analysis

Plaintiff alleges that Defendant violated his constitutionally-protected rights and New Mexico law, and brings suit under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act. First, Plaintiff complains that Defendant violated his Eighth Amendment rights by inflicting cruel and unusual punishment on him when he ripped the bed sheet

from him and then made threats against him. Second, Plaintiff contends that Defendant violated his First Amendment rights by retaliating against him for filing a grievance against Defendant. Last, Plaintiff alleges that Defendant committed a battery against him.

Defendant filed a *Martinez* Report and moves for summary judgment on all counts, arguing that Plaintiff has failed to demonstrate that a genuine issue of material fact exists as to Plaintiff's claim under the Eighth Amendment and his tort claim, that he is entitled to qualified immunity as to both constitutional claims, and that the First Amendment claim is precluded pursuant to the administrative exhaustion requirements of the Prisoner Litigation Reform Act ("PLRA").

Plaintiff responds by challenging some of the facts asserted by Defendant as still being in dispute. Plaintiff further argues that Defendant acted negligently and not in good faith, and therefore Defendant is not entitled to summary judgment or qualified immunity. Last, Plaintiff contends that he filed the appropriate grievances with regards to the Eighth Amendment claim.[4]

A.    <u>Count 1: Eighth Amendment Claim</u>

Plaintiff's first claim is that Defendant subjected him to cruel and unusual punishment in violation of the Eight Amendment by ripping a bed sheet off of him causing a "deep cut," and subsequently threatening him after Plaintiff reported the incident.  Defendant argues that he is entitled to qualified immunity because Plaintiff has failed to demonstrate that his actions violated the Eighth Amendment, or in the

---

[4] To the extent that Plaintiff's Response also includes a request that the Court compel production of all of Defendant's "staff incident reports," (Doc. 37 at 4), the motion is denied for the reason that the information is not necessary for the disposition of this matter and the Court did not order this material to be produced in its Order for Initial *Martinez* Report.

alternative that Plaintiff has not set forth a constitutional claim as to the verbal threats. Plaintiff responds that Defendant is not entitled to summary judgment because Defendant did not act in good faith and Defendant was negligent at his expense.

### 1. Defendant's Use of Force

First, the Court will address Plaintiff's claim that Defendant violated the Eighth Amendment when he ripped the bed sheet off of him, causing cuts to his neck and shoulder. Plaintiff claims that Defendant violated his right to be free from cruel and unusual punishment by being negligent when Defendant ripped the bed sheet from his body while he was sleeping. Defendant argues that he is entitled to qualified immunity as to this claim.

Government officials are entitled to qualified immunity from liability for civil damages under § 1983 when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Smith v. Cochran*, 339 F.3d 1205, 1211 (10th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, and the plaintiff must first establish that the defendant's actions violated a constitutional or statutory right." *Smith*, 339 F.3d at 1211 (quotations omitted). "When the plaintiff fails to satisfy either part of this two-part inquiry, the court must grant the defendant qualified immunity." *Id.* (quotations omitted). "[I]f the plaintiff successfully establishes the violation of a clearly established right, the burden shifts to the defendant, who must prove that there are no genuine issues of material fact and that he . . . is entitled to judgment as a matter of law." *Id.* (quotations omitted).

The Court will first address whether Plaintiff has established that Defendant's actions violated the Eighth Amendment. The Eight Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. Use of excessive force against a prisoner can violate the Eighth Amendment's prohibition when it is unnecessarily and wantonly inflicted. *Smith*, 339 F.3d at 1212.

A prison official violates an inmate's Eighth Amendment right if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). Thus, the Eighth Amendment is violated when: (i) objectively, the deprivation alleged is "sufficiently serious"; and (ii) the prison official had "a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834.

The objective component of an Eighth Amendment claim is "contextual and responsive to contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quotations and alterations omitted). In the excessive force context, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Id.* at 9 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Even if a use of force is deemed unnecessary after the fact, if it was both de minimis and "not of a sort repugnant to the conscience of mankind," it will not sustain an excessive-force claim. *Hudson*, 503 U.S. at 9–10 (quotations omitted).

Defendant argues that Plaintiff has not demonstrated with any admissible evidence that the injuries he sustained as a result of the bed sheet incident were more than de minimis. Indeed, the only evidence that Plaintiff has put forth is his own

statement in the Complaint that the sheet caused a "deep cut" on both his neck and shoulder. However, the incident report and subsequent investigation suggest otherwise. (Doc. 28-10). As an initial matter, at first, Plaintiff described the injury as a "burn on [his Adam's] apple," and not as a cut. (*Id.* at 4). Furthermore, the Inmate Accident Investigation Cover Sheet completed by Sergeant Carlos Yguado describes the injury as "a red scratch on [Plaintiff's] neck and shoulder." (*Id.* at 1, 9). The photographs taken on October 26 of Plaintiff's neck and shoulder do not show that Plaintiff had a deep cut or deep gash on those areas of his body. (*Id.* at 10–12). The record shows that the day after the alleged incident, Plaintiff went to a medical unit, where he complained of pain in his neck; the registered nurse who observed him cleared him to return to his pod, with no indication that he was treated in any way for his injury. (Doc. 28-10 at 7, 8). The next complaint of neck pain in the record was made to a mental health counselor on November 21, 2013. (Doc. 28-11 at 10). The following day Plaintiff reported to sick call complaining of "extreme" neck pain resulting from the incident. (Doc. 28-11 at 11; Doc. 28-17 at 37). At that time, medical staff observed no redness or bruising, but Plaintiff was provided ibuprofen. (Doc. 28-11 at 11; Doc. 28-17 at 37).

Defendant points the Court to several decisions where the Tenth Circuit found that the objective component of an Eighth Amendment claim was not met. For example, where an inmate alleged that an officer grabbed him around the neck and "went to twisting it and hurting it," the Court found that the officer's actions were not objectively harmful enough to establish a constitutional violation. *Norton v. The City of Marietta, Okla.*, 432 F.3d 1145, 1156 (10th Cir. 2005) (noting also that the officer claimed he used force when the inmate refused to comply with his order to lay on the bed). More

11

recently, the Tenth Circuit also held that when an officer allegedly grabbed and dug his fingernails into an inmate's arm while handcuffing the inmate, resulting in a bruise and red area on the inmate's arm, that the inmate "failed to allege sufficient facts to show wrongdoing that was objectively harmful enough to establish a constitutional violation." *Marshall v. Milyard*, No. 10-1104, 415 Fed. Appx. 850, 852 (10th Cir. Jan. 31, 2011) (unpublished).

In *Marshall*, the Tenth Circuit observed that other circuit courts have reached similar results in cases where comparable force or injury occurred. 415 Fed. Appx. at 853 (citing *DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000) (holding that use of force was de minimis when officer shoved plaintiff into a doorframe because it was a single, isolated act, and the bruising was not particularly serious); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (finding that bumping, grabbing, elbowing, and pushing a prisoner was "not sufficiently serious or harmful to reach constitutional dimensions"); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985) ("The allegation that defendant caused a relatively minor injury to appellant's leg, poked him in the back, and spoke in a belligerent tone fails to state a claim under the Eighth Amendment.")).

Defendant argues that in those cases, more egregious force was used and more extensive injury was sustained than what Plaintiff alleges in this case. Thus, the Court should find that Plaintiff has failed to demonstrate that he has satisfied the objective component of his Eighth Amendment claim. This Court agrees that the force allegedly used by Defendant, which consisted of the single, isolated incident of removing a bed sheet and causing red scratches on Plaintiff's shoulder and neck, was de minimis based on the binding precedent and persuasive case law cited by Defendant. However, to be

sure that Plaintiff has failed to meet his burden regarding his excessive force claim, the Court will also determine whether Plaintiff has set forth enough facts to satisfy the subjective component of his claim.

To prevail on the subjective component, a plaintiff must show "that the defendants knew he faced a substantial risk of harm and disregarded that risk . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009) (internal citations and alterations omitted). The subjective standard requires a sufficiently culpable state of mind on the part of the official. *See Gonzalez v. Martinez*, 403 F.3d 1179, 1186 (10th Cir. 2005). A complaint that alleges mere negligence by prison officials will not suffice to meet the subjective prong of deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976). "It requires a level of recklessness tantamount to criminal recklessness, inclusive of a subjective *mens rea*." *Belcher v. Loftness*, No. 03-3261-JWL, 2005 WL 2323222, at *5 (D. Colo. Sept. 22, 2005) (unpublished).

Further, "only the '"unnecessary and wanton infliction of pain"' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Sampley v. Ruettgers*, 704 F.2d 491, 495 (10th Cir. 1983). "'[W]anton' requires that the guard have intended to harm the inmate." *Id*. "Second, 'unnecessary' requires the force used to have been more than appeared reasonably necessary at the time of the use of force to maintain or restore discipline. *Id*. Third, "the attack must have resulted in either severe pain or a lasting injury." *Id*. In applying this test, the Court looks

> to such factors as the need for the application of force, the relationship
> between the need and the amount of force that was used, the extent of

injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Id.* at 495–96 (quotations omitted). "A court should also bear in mind that a prison guard, to maintain control of inmates, must often make instantaneous, on-the-spot decisions concerning the need to apply force without having to second-guess himself." *Id.* (quotations omitted).

The facts before the Court are that Defendant deployed force in order to perform a welfare check on Plaintiff. Plaintiff claims that Defendant ripped his bed sheet off his body, while yelling at him. The resulting injuries were two red scratches that allegedly caused Plaintiff pain. Defendant argues that, even if the Court accepts as true Plaintiff's allegation that he removed the bed sheet as Plaintiff describes, that Plaintiff's allegations fail to satisfy the subjective component for an Eighth Amendment violation. Here, Defendant has submitted uncontroverted evidence that suggests he acted with a concern for Plaintiff's well-being and a legitimate penalogical purpose and in conformity with BCMDC's policies and procedures. It is undisputed that removing the bed sheet from Plaintiff's person was authorized by BCMDC's policies regarding inmate welfare and attention to possible suicide attempts.

Moreover, Plaintiff does not even allege that Defendant acted with the requisite wanton disregard required for an Eight Amendment violation. He merely contends that that Defendant's actions were negligent. (Doc. 37 at 1 ¶ 6, 5 ¶ 36). As stated above, mere negligence by prison officials will not suffice to meet the subjective prong of deliberate indifference. *Estelle*, 429 U.S. at 106. While Plaintiff also asserts that Defendant's actions were not for the purpose of restoring order, (Doc. 37 at 5), he fails

to put forward any evidence in support of the conclusion, and therefore the Court finds that his contention is unsupported.

The Court finds that the nature of the force used, which was for the purpose of performing a welfare check on Plaintiff, coupled with the evidence of only minor injury that was sustained, support a conclusion that Plaintiff has not established that Defendant deployed wanton and unnecessary force in this instance.

As explained above, because Defendant has raised the defense of qualified immunity, it is Plaintiff's burden to demonstrate that Defendant violated his Eighth Amendment rights and that the law was clearly-established at the time regarding the alleged violation. The Court finds that Plaintiff has failed to satisfy that burden, because he has not come forward with any evidence that would create a genuine issue for trial that an Eighth Amendment violation occurred. He has not established that the force used was more than de minimis, or that Defendant acted with the requisite intent. Therefore, the Court finds that Defendant is entitled to qualified immunity regarding this claim, and recommends that it be dismissed with prejudice.

2.    *Defendant's Verbal Threats*

Plaintiff also asserts that Defendant violated the Eighth Amendment by verbally threatening him after he reported the bed sheet incident and filed a grievance against Defendant. Defendant moves for summary judgment on the basis that Plaintiff has failed to demonstrate an Eighth Amendment violation by making these alleged verbal threats.

Plaintiff claims that after he reported the incident, Defendant slandered and threatened him. Plaintiff alleges that as a result of these threats, Plaintiff has had severe nightmares, is in fear of leaving his room, and lives in fear of his safety under

Defendant's supervision and of other inmates who believe he is a snitch. (Doc. 1 at 3; Doc. 37 at 5).

De minimis applications of force, verbal threats, and harassment are necessarily excluded from the cruel and unusual punishment inquiry. *Northington*, 973 F.2d at 1524. However, inmates have a constitutional "right to be free from the terror of instant and unexpected death at the hands of their keepers." *Id*.

Here, Defendant's purported threats do not suggest a show of deadly force, nor has Plaintiff established that Defendant created "terror of instant and unexpected death." *See Alvarez v. Gonzales*, No. 05-6129, 155 Fed. Appx. 393, 396 (10th Cir. Nov. 10, 2005) (unpublished) (holding that inmate failed to assert a constitutionally protected right when a prison officer stated to another that he would "burn this guy," and officers antagonized him with sexually inappropriate comments). Plaintiff has not alleged that Defendant caused him "terror of instant and unexpected death," or baldly asserted facts that could lead a rational trier of fact to find in his favor under the standard.

Therefore, the Court concludes that Plaintiff has failed to demonstrate with any significantly probative evidence that Defendant violated his Eighth Amendment rights by making verbal threats. The Court recommends that this claim also be dismissed with prejudice.

B.    *Count II: First Amendment Violation for Retaliation*

Next, Plaintiff alleges that Defendant retaliated against him in violation of the First Amendment after he filed a grievance against Defendant for the bed sheet incident. Defendant contends that Plaintiff's First Amendment claim of unlawful retaliation should be dismissed because Plaintiff did not avail himself of the requisite grievance

procedures prior to filing this suit. Plaintiff states that Defendant threatened him with physical harm and told other inmates that Plaintiff was a rat and a snitch.

PLRA requires an inmate to exhaust all available administrative remedies before filing a lawsuit related to prison conditions. 42 U.S.C. § 1997e(a). Exhaustion is mandatory, and unexhausted claims cannot be successfully asserted in federal court. *Jones v. Bock*, 549 U.S. 199, 211 (2007). To properly exhaust administrative remedies an inmate must comply with "the administrative review process in accordance with the applicable procedural rules," including deadlines, as defined by the prison grievance process. *Id.* at 218.

Failure to exhaust pursuant to PLRA is an affirmative defense, and therefore the burden of demonstrating that Plaintiff has not exhausted his administrative remedies lies with Defendant. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). Defendant must prove that: (i) administrative remedies were available to the inmate, and (ii) the inmate failed to exhaust those remedies. *Purkey v. CCA Det. Ctr.*, No. 06-3389, 263 Fed. Appx. 723, 726 (10th Cir. Feb. 5, 2008) (unpublished).

Defendant provided the Court with BCMDC's policies and procedures regarding the formal grievance system inmates must use to complain about the conditions of their confinement. (Doc. 28-21 at 16–18). In accordance with BCMDC Policy 13.09, initially, a BCMDC inmate should seek to resolve any grievance or particular area of concern by informally discussing the matter with staff. (*Id.* at 16). If the matter is not resolved, the inmate may initiate a grievance, provided that it satisfies all of the following: (i) the grievance concerns a single issue or situation that personally affects that inmate in the areas of health and welfare or areas of operations and facility services; (ii) the inmate

17

completes the grievance for himself and uses the correct form; (iii) the grievance addresses a complaint of oppression or misconduct by an employees in administering their duties; and (iv) the grievance does not concern the handling of a disciplinary hearing. (*Id.*).

After the grievance is submitted, a staff member designated by the Chief of Corrections reviews it to determine whether it is an actual grievance or a general request, and then the grievance is forwarded to the appropriate department manager for response. (Doc. 28-21 at 18). Department managers have ten days to review and answer the grievance and close the grievance once the response is provided. (*Id.*). An appeal of the response can be filed within five days if the inmate is not satisfied, which is the final step in the process. (*Id.*).

Defendant claims that Plaintiff failed to follow the BCMDC's written grievance policy with respect to his allegation of retaliation, and therefore Plaintiff has not satisfied the PLRA's exhaustion requirement. Defendant demonstrates that to pursue remedies through the BCMDC's grievance process, Plaintiff should have completed and filed a grievance pursuant to BCMDC's grievance policy, and then appealed the response if it was unsatisfactory.

Defendant attached Plaintiff's entire grievance file from BCMDC dated July 9, 2012 through December 2, 2013.[5] (Doc. 28-1). The grievance file reveals that Plaintiff never grieved Defendant for any retaliatory acts, although he did file numerous other grievances while housed at BCMDC. Plaintiff does not allege in the Complaint that he

---

[5] Defendant's *Martinez* Report includes the affidavit of Stephanee Baca, the Custodian of Records for BCMDC Civil Litigation/Internal Affairs Unit, who states that the records provided are kept by BCMDC in the regular course of business and prepared as a regular practice and custom, and are true and correct copies of the original records. (Doc. 28-20).

filed any grievances regarding his allegation of retaliation by Defendant, and Plaintiff failed to dispute Defendant's contention in his Response to Defendant's Motion for Summary Judgment. Thus, Plaintiff was given an opportunity to demonstrate that he exhausted all of his administrative remedies as to his First Amendment claim, but did not respond with any arguments or evidence that he utilized the grievance procedure for Defendant's alleged retaliatory acts.

The record demonstrates that Plaintiff has not adhered to the requirements of the available grievance process, because he did not properly complete both required written grievance steps. Therefore, Plaintiff has not complied with the mandatory exhaustion rule, and is barred from pursuing his First Amendment claim against Defendant.

The Court should dismiss a claim without prejudice if it finds that it has not been properly exhausted pursuant to the PLRA. *See Wilson v. Bezona*, No. 12-1078, 485 Fed. Appx. 976, 978 (10th Cir. Oct. 10, 2012) (unpublished) (remanding case to district court so that it could modify its dismissal for failure to exhaust administrative remedies as being without prejudice). In this case, the Court has determined that Plaintiff's First Amendment claim is unexhausted, and recommends the First Amendment claim be dismissed without prejudice.

C.   _Count III: Battery_

Plaintiff also alleges that Defendant violated "New Mexico law" when he ripped the bed sheet from his face and caused him injury. The Court construes this count as a civil claim for battery brought pursuant to the New Mexico Tort Claims Act, and Defendant accordingly moves for summary judgment on the claim.

A federal court may exercise supplemental jurisdiction over state law claims, but only if those claims are related to a claim over which the court possesses original jurisdiction. 28 U.S.C. § 1367. Since a court must have original jurisdiction in order to exercise supplemental jurisdiction, dismissal of the federal claims in a case precludes the Court from exercising supplemental jurisdiction over the related state law claim. *Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1166–67 (10th Cir. 2004). Thus, in this case, jurisdiction over the state law claim would be lacking because only the federal claims purport to invoke the original jurisdiction of this Court, and the Court has recommended that those claims be dismissed.

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988). The Court finds no reason why this case would depart from "the usual case," and further notes that the statute of limitations has not yet run on Plaintiff's battery claim.[6] *See* NMSA 1978, § 37-1-8 (three-year statute of limitations for tort claims). Though the claim was properly before the Court at the time the Complaint was filed, the Court has recommended dismissal of all of Plaintiff's federal claims and therefore should decline to exercise jurisdiction over the remaining pendent state law claim. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right").

---

[6] In other words, should Chief Judge Armijo adopt this Court's *Proposed Findings and Recommended Disposition*, Plaintiff would still be able to assert his state law claim in state court, as long as he does so within the limitations period.

Because this Court recommends that all federal claims be dismissed, it finds that the Court should decline to exercise jurisdiction over Plaintiff's remaining state law claim. Therefore, the Court recommends that Plaintiff's battery claim be dismissed without prejudice.

## V.   Conclusion

For the reasons stated above, the Court recommends that:

a) *Defendants' Motion for Summary Judgment and Supporting Memorandum*, (Doc. 28), be **GRANTED** in favor of Defendant;
b) Plaintiff's Eighth Amendment claim against Defendant be **DISMISSED WITH PREJUDICE**;
c) Plaintiff's First Amendment claim against Defendant be **DISMISSED WITHOUT PREJUDICE**;
d) Plaintiff's tort claim against Defendant be **DISMISSED WITHOUT PREJUDICE**; and
e) All other relief requested by Plaintiff be **DENIED**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE